MICHAEL D. DEMPSEY (State Bar No. 43310)
REBECCA A. ASUAN-O'BRIEN (State Bar No. 235646)
DEMPSEY & JOHNSON P.C.
1880 Century Park East, Suite 516
Los Angeles, California 90067-1605
Telephone: (310) 551-2300
Facsimile: (310) 551-2301

Attorneys for Plaintiff,
MARSEILLES CAPITAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSEILLES CAPITAL, LLC, a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>GEROVA FINANCIAL GROUP, LTD,, a Cayman Islands corporation,<br><br>Defendant. | CASE NO.: CV11 07764CAS (JCGx)<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL SUBPOENAED WITNESS EUGENE SCHER TO ATTEND DEPOSITION IN AID OF EXECUTION AND FOR SANCTIONS IN THE AMOUNT OF $7500 AGAINST EUGENE SCHER AND HIS ATTORNEY ALEX WEINGARTEN; DECLARATIONS OF MICHAEL D. DEMPSEY AND MARSHALL MANLEY IN SUPPORT THEREOF**<br><br>Magistrate Judge: Hon. Jay C. Gandhi<br><br>Date: November 21, 2011<br>Courtroom: 827A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 21, 2011 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 827A of the above-entitled court located at 312 Spring Street, Los Angeles, CA 90012, plaintiff Marseilles Capital, LLC ("Marseilles") will move this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an Order compelling Eugene Scher ("Scher") to attend a deposition in aid of execution on a Florida judgment at the office of Marseilles' counsel, Dempsey & Johnson P.C., 1880 Century Park East, Suite 516, Los Angeles California 90067, at 10:00 a.m. on December 6 or December 13, 2011.

This motion is brought pursuant to Rule 37 of the Federal Rules of Civil Procedure and is made on the grounds that in spite of having been personally served with a valid deposition subpoena, Scher refused to appear for deposition.

**PLEASE TAKE FURTHER NOTICE** that Marseilles will also request that the Court, pursuant to Rules 30, 37, and 45 of the Federal Rules of Civil Procedure and Local Rule 37-4, issue an Order that Scher and his attorney Alex Weingarten pay sanctions in the amount of $7500.00 for failing and refusing to comply with a valid deposition subpoena and thereafter causing unreasonable delay and expense by promising to appear for deposition and then failing to do so.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, and the Declarations of Michael D. Dempsey and Marshall Manley filed concurrently herewith, and such oral argument and evidence that may be allowed by the Court prior to its decision in this matter.

///
///
///

**PLEASE TAKE FURTHER NOTICE** that despite the good faith efforts of Marseilles' counsel to participate in a pre-filing conference with opposing counsel pursuant to Local Rule 7-3, Scher's counsel failed to meaningfully meet and confer with Marseilles' counsel, as set forth in the concurrently filed Declaration of Michael D. Dempsey.

DATED: October 26, 2011           DEMPSEY & JOHNSON P.C.

By: /s/ Michael D. Dempsey
MICHAEL D. DEMPSEY
REBECCA A. ASUAN-O'BRIEN
Attorneys for Plaintiff, MARSEILLES CAPITAL, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

Eugene Scher ("Scher) is the Chief Operating Officer of judgment debtor Gerova Financial Group, LLC ("Gerova"), against whom plaintiff Marseilles Capital, LLC ("Marseilles") has obtained a judgment in the amount of $375,000. After initially refusing without justification to appear for deposition pursuant to a valid subpoena, Scher promised to appear in order to avoid an order to show cause why he should not be held in contempt for failure to appear. Scher then failed to appear for his deposition on the agreed upon date and has thereafter refused to reschedule the deposition for a date certain.

Marseilles has reason to believe Scher's failure and refusal to comply with the deposition subpoena is part and parcel of a strategy devised by Gerova to stall while it moves its assets in an attempt to thwart Marseilles' collection efforts against Gerova. Scher's refusal to appear for deposition has impeded Marseilles' efforts to collect on its judgment against Gerova, resulted in unnecessary delay, and caused Marseilles to incur unnecessary expense, including attorney's fees and costs.

## II.

## STATEMENT OF RELEVANT FACTS

On May 12, 2011, Marseilles obtained a final judgment in the amount of $375,000 plus interest against Gerova in the United States District Court, Southern District of Florida, Ft. Lauderdale Division, Case No. 10-81294-CV-COHN-SELTZER (the "Underlying Action"). (Declaration of Marshall Manley ("Manley Decl.") at ¶4; Exhibit A to the Manley Decl.)

On July 21, 2011, Marseilles issued a subpoena for deposition in aid of execution on Gerova's Chief Operating Officer Eugene (a/k/a Gene) Scher ("Scher"). (Manley Decl. at ¶5; Exhibits B and C to the Manley Decl.) Scher was personally served with the deposition subpoena on July 28, 2011. (Manley Decl. at ¶5; Exhibit D

to the Manley Decl.)  On August 22, 2011 – twenty-five (25) days after personal service and just one week before Scher's scheduled deposition – his attorney contacted Marseilles and unequivocally stated Scher "is not available for, and will not be appearing at, his deposition."  (Declaration of Michael D. Dempsey ("Dempsey Decl.") at ¶2; Exhibit 1 to the Dempsey Decl.)  Scher's counsel suggested Marseilles simply wait to "discuss any necessary rescheduling."  (Exhibit 1 to the Dempsey Decl.)

On August 24, 2011, counsel for Gerova contacted Scher's attorney to follow up on his request to accommodate him regarding the date, time, and place of the deposition.  (Dempsey Decl. at ¶4; Exhibit 2 to the Dempsey Decl.)  On August 26, 2011, Scher's attorney again stated Scher would not attend the scheduled deposition, offered no alternative dates, and stated without any explanation for the significant delay that "it will likely be mid-October before we can schedule a deposition."  (Dempsey Decl. at ¶5; Exhibit 3 to the Dempsey Decl.)  Despite having been personally served with a lawfully issued deposition subpoena, Scher disobeyed the deposition subpoena by refusing to appear on the date commanded.  A statement of non-appearance was obtained when Scher did not appear for his deposition on August 29, 2011.  (Dempsey Decl. at ¶6; Exhibit 4 to the Dempsey Decl.)

Notwithstanding Scher's refusal to appear for deposition on August 29, 2011, Marseilles continued its efforts to contact Scher's counsel in order to obtain dates certain on which he would be available for deposition.  (Dempsey Decl. at ¶¶7 and 8.)  Scher's counsel did not respond at all, thereby refusing to provide any dates or acknowledge in any way Marseilles' attempts to informally resolve this matter.  (Dempsey Decl. at ¶¶7 and 8.)

On September 29, 2011, Marseilles filed an *ex parte* application seeking an order compelling Scher to appear for deposition and an order to show cause why Scher should not be found in contempt for failure to appear for deposition in the first place.  (Dempsey Decl. at ¶9; Exhibit 14 to the Dempsey Decl.)  Only after Marseilles

4

sought court intervention did Scher and his counsel surface. On October 3, 2011, Scher agreed to appear for deposition on October 13, 2011 on the condition that Marseilles withdraw its *ex parte* application. (Dempsey Decl. at ¶10; Exhibits 15, 16, and 17 to the Dempsey Decl.) Marseilles promptly withdrew its *ex parte* application on October 4, 2011. (Dempsey Decl. at ¶11.)

On October 12, 2011 at 9:34 p.m. – the evening before Scher's promised appearance – Scher's counsel advised Gerova that Scher would not be attending his deposition because of a family emergency. (Dempsey Decl. at ¶12; Exhibit 18 to the Dempsey Decl.) Scher's counsel suggested that "[i]n lieu of [Marseilles] having to file a motion to compel" he would suggest that Scher stipulate to an order setting the deposition on a new date. (*Id.*) On October 13, 2011, Marseilles' counsel provided Scher's counsel with a draft stipulation and proposed order. (Dempsey Decl. at ¶12; Exhibits 19 and 20 to the Dempsey Decl.) Scher's counsel advised Marseille's counsel that he had not spoken with Scher but that he would get back to him as soon as he did. (Dempsey Decl. at ¶13; Exhibit 21 to the Dempsey Decl.)

Marseilles' counsel left Scher's counsel a voicemail on October 17, 2011 requesting a response to the proposed stipulation. (Dempsey Decl. at ¶14.) Scher's counsel did not respond. (Dempsey Decl. at ¶14.) On October 19, 20011, Marseilles' counsel followed up by email to secure a new deposition date in lieu of filing a motion to compel. (Dempsey Decl. at ¶14; Exhibit 22 to the Dempsey Decl.) Again, Scher's counsel did not respond. (Dempsey Decl. at ¶14.) On October 24, 2011, Marseilles' counsel sent another email inquiring about the status of Scher's deposition and advising Scher's counsel of their obligation to meet and confer in good faith prior to the filing a motion to compel. (Dempsey Decl. at ¶15; Exhibit 23 to the Dempsey Decl.) On October 25, 2011, Marseilles' counsel attempted once again to reach Scher's counsel by telephone in order to meet and confer regarding this motion to compel. (Dempsey Decl. at ¶16.) Scher was unavailable. (*Id.*)

Scher's counsel finally responded on the evening of October 25, 2011, advising

Marseilles' counsel that he was researching issues related to staying the Underlying Action and requesting revisions to the protective order the parties had worked on before Scher's last-minute cancellation of his deposition. (Dempsey Decl. at ¶17; Exhibit 24 to the Dempsey Decl.) On October 26, 2011, Marseilles' counsel advised Scher's counsel that in light of Scher's cancellations and refusals to appear, he would go forward with filing the motion but would take it off calendar if Scher agreed to appear for deposition on a date certain pursuant to the stipulation previously presented to Scher's counsel. (Dempsey Decl. at ¶18; Exhibit 25 to the Dempsey Decl.)

## II.

## ARGUMENT

### A. Scher Has No Justification For Disobeying The Subpoena

Marseilles personally served Scher with a lawful subpoena on July 28, 2011. Twenty-five (25) days later – on August 22, 2011 – Scher's lawyer advised Marseilles for the first time that his client would not appear for deposition.

A nonparty witness <u>must</u> comply with a subpoena unless and until the subpoena is quashed. [See <u>United States v. Ryan</u>, 402 U.S. 530, 532 (1971).] Scher neither identified valid grounds for moving to quash the subpoena nor did he bring any such motion prior to the deposition date.

As an alternative to moving to quash a subpoena, Rule 45 of the Federal Rules of Civil Procedure provides for the modification of a subpoena based on certain grounds, such as failure to allow reasonable time for compliance, requiring excessive travel or imposing other undue burden on the deponent, or seeking the disclosure of privileged or protected information. No valid grounds exist for modifying the subpoena. Marseilles allowed adequate time – one month – between the personal service of the deposition subpoena and the date of deposition. The location of the deposition did not require excessive travel or impose any undue burden on Scher. Marseilles did not improperly seek the disclosure of privileged or protected information.

1 Similarly, Rule 45 also allows a witness to seek a protective order in response to an overreaching deposition subpoena. Scher did not move for a protective order.

Even if valid grounds for quashing or modifying the subpoena or moving for a protective order existed – and they did not – Scher's counsel did not even attempt to contact Marseilles until August 22, 2011 – just a week before the scheduled deposition. Scher provided no justification for his refusal to appear for deposition on August 29, 2011.

Faced with Scher's refusal to appear for deposition and his counsel's failure to respond to Marseilles' attempts to reschedule the deposition, Marseilles was forced to seek *ex parte* relief. Only after filing an *ex parte* application seeking an order to compel Scher to appear and an order to show cause why he should not be held in contempt for failing to appear in the first place did Scher's counsel finally respond to Marseilles. Scher offered to appear on a new date if Marseilles withdrew its *ex parte* application, which it did immediately. However, on the evening before the rescheduled deposition, Scher's counsel advised Marseilles that once again Scher would not appear for deposition due to an unspecified and conveniently timed "family emergency." At Scher's counsel's suggestion, Marseilles drafted a stipulation for an order setting a new deposition. However, Scher has disappeared and his counsel has been unresponsive to multiple invitations to meet and confer in order to informally resolve this dispute.

Given Scher's multiple failures to appear for deposition and repeated refusal to cooperate with Marseilles' more than reasonable attempts to reschedule the deposition, Marseilles cannot help but suspect Scher is attempting to improperly stall collection efforts in the Underlying Action in order to buy additional time for Gerova to shift its assets and avoid its obligations under the judgment Marseilles obtained against it in the Underlying Action.

///

///

B. **The Court Should Issue An Order Compelling Scher's Attendance At Deposition**

Rule 37 of the Federal Rules of Civil Procedure allows a party to move for an order compelling discovery, including attendance at deposition. Rule 37(a)(2) provides that a motion for an order against a nonparty, such as Scher, must be made in the court where the discovery is or will be taken. Similarly, Rule 45(c)(2)(B) provides that such motions to enforce deposition subpoenas to nonparties must be brought in the court which issued the subpoena; here, the Central District of California.

Scher refused to attend his duly scheduled deposition and offered no valid justification for his failure to attend. Since then, Scher and his counsel have engaged in a pattern of gamesmanship: refusing to cooperate or respond to Marseilles' attempts to reschedule the deposition, promising to appear after Marseilles sought court intervention, and failing once again to appear for deposition. The evening before Marseilles was forced to file this motion, Scher's counsel resurfaced but has offered no dates certain on which his client will agree to appear for deposition. Good cause exists to issue an order compelling Scher's attendance at deposition.

C. **Scher And His Counsel Should Be Ordered To Pay Sanctions For Failing And Refusing To Appear For Deposition And Failing And Refusing To Cooperate**

Courts may punish a witness who, having been subpoenaed to appear for deposition, fails to appear for deposition. [See FRCP 37(d), 45(e).] In addition, Local Rule 37-4 provides that "[t]he failure of any counsel to comply with or cooperate in [the required meet and confer] procedures may result in the imposition of sanctions." Scher failed to attend his duly scheduled deposition and offered no valid justification for his failure to attend. Scher and his counsel subsequently refused to cooperate or even correspond with Marseilles to modify the subpoena by rescheduling it for a mutually convenient date. After Marseilles filed an *ex parte* application with this court, Scher agreed to appear for deposition only to cancel at the last minute.

8

Scher has once again disappeared. Marseilles promptly drafted a stipulation for an order setting a new date for Scher's deposition at Scher's counsel's suggestion, but the stipulation has been ignored. Scher's counsel has dodged Marseilles' straightforward attempts to resolve this matter informally by either not responding in a timely manner to requests to meet and confer or by providing vague updates regarding his inability to contact his client and by requesting that additional conditions be met before his client comply with a validly issued deposition subpoena. Good cause exists to sanction Scher and his counsel for the flagrant gamesmanship they have indulged in, and no doubt will continue to indulge in if this Court does not intervene.

## IV.

## CONCLUSION

Marseilles respectfully requests that the Court issue an order compelling Scher's attendance at deposition on December 6 or December 13, 2011, to ensure Marseilles does not waste additional time or to incur further unnecessary expense in its collection efforts against Gerova. Marseilles also requests that the Court issue an order requiring Scher and his counsel Alex Weingarten pay sanctions in the amount of $7500.00.

DATED: October 26, 2011          DEMPSEY & JOHNSON P.C.

By: _____
MICHAEL D. DEMPSEY
REBECCA A. ASUAN-O'BRIEN
Attorneys for Plaintiff, MARSEILLES CAPITAL, LLC

# DECLARATION OF MICHAEL D. DEMPSEY

I, MICHAEL D. DEMPSEY, declare and state as follows:

1. I am a resident of the State of California, over twenty-one years of age, and am an attorney at law, duly licensed to practice before all courts of the State of California and admitted to practice before this court. I am a partner in the law firm of Dempsey & Johnson P.C. ("Dempsey & Johnson"), counsel of record in this matter for plaintiff Marseilles Capital, LLC ("Marseilles"). I make this declaration in support of Marseilles' Motion to Compel Subpoenaed Witness Eugene Scher to Attend Deposition in Aid of Execution and for Sanctions. I have personal knowledge of all of the facts contained in this declaration and, if called as a witness, I could and would competently testify to all of said facts.

2. On August 22, 2011, a copy of a letter written by Mr. Scher's counsel, Alex Weingarten was forwarded to me by Florida counsel for Marseilles, Daniel Rosenbaum. A true and correct copy of Mr. Weingarten's letter is attached hereto as Exhibit 1.

3. On August 23, I called Mr. Weingarten and spoke to him regarding his client's deposition. I told him Marseilles was willing to work with him to reschedule Mr. Scher's deposition provided the new date was agreed upon immediately and the deposition was set for a date no later than mid-September.

4. On August 24, 2011, I followed up on my conversation with Mr. Weingarten in writing and again offered to accommodate Mr. Scher's schedule in rescheduling the deposition. A true and correct copy of my letter is attached hereto as Exhibit 2.

5. On August 26, 2011, I received a letter from Mr. Weingarten advising me that Mr. Scher would not attend his deposition and stating that he would not be able to reschedule his deposition until mid-October. A true and correct copy of Mr. Weingarten's letter is attached hereto as Exhibit 3.

1
**DECLARATION OF MICHAEL D. DEMPSEY**

6. Given Mr. Scher's refusal to provide Marseilles with a date certain upon which to set his deposition and Mr. Scher's failure to provide any valid reason for not appearing at his duly scheduled deposition on August 29, 2011, I obtained a statement of non-appearance on August 29, 2011. A true and correct copy of the statement of non-appearance is attached hereto as Exhibit 4.

7. Between August 29, 2011 and September 7, 2011, I emailed Mr. Weingarten six times in an attempt to secure a new deposition date for Mr. Scher and avoid the *ex parte* application currently before this Court. I also left Mr. Weingarten a voicemail message on September 6, 2011 asking for a new date for Mr. Scher's deposition. Although Mr. Weingarten assured me on August 29, 2011 that he would contact me after Labor Day, he did not respond to my emails or voicemail message requesting a new deposition date for his client nor did he respond to my final email advising him that we would seek an order to show cause why Mr. Scher should not be held in contempt of court for refusing to appear for deposition. Mr. Weingarten unilaterally refused to meet and confer with me in order to avoid bringing the current *ex parte* application before this Court, as required by Local Rule 37-1. Mr. Weingarten's refusal to meet and confer or even communicate with me made the filing of a joint stipulation pursuant to Local Rule 37-2.4 impossible. True and correct copies of my emails are attached hereto as Exhibits 5, 6, 7, 8, 9, and 10. A true and correct copy of Mr. Weingarten's August 29, 2011 email is attached hereto as Exhibit 11.

8. On the morning of September 29, 2011, I attempted once again to informally resolve this dispute by emailing Mr. Weingarten to advise him that we had been ordered by Judge Snyder to re-file our *ex parte* application with Magistrate Judge Gandhi. I provided Mr. Weingarten with a draft of our *ex parte* application and said that if Mr. Scher would stipulate to appear in our office for deposition on October 7th or 11th, we would not file the *ex parte* application with the Court. A true and correct copy of my email is attached hereto as Exhibit 12. Mr. Weingarten did not

2
**DECLARATION OF MICHAEL D. DEMPSEY**

respond to my email. I emailed him once again on the afternoon of September 29, 2011 to advise him that since he had not responded by phone call or email, I would have no choice but to file the *ex parte* application. A true and correct copy of my email is attached hereto as Exhibit 13.

9. After receiving no response from Mr. Weingarten, I proceeded to file the *ex parte* application on September 29, 2011. A true and correct copy of the *ex parte* application is attached hereto as Exhibit 14.

10. On October 3, 2011, Mr. Weingarten advised me by email he and his client were unavailable on the dates set forth in the *ex parte* application. A true and correct copy of Mr. Weingarten's email is attached hereto as Exhibit 15. I provided Mr. Weingarten further dates by email and we agreed Mr. Scher would appear for deposition on October 13, 2011. True and correct copies of my email to Mr. Weingarten and his response are attached hereto as Exhibits 16 and 17.

11. On October 4, 2011, our office prepared and filed a notice of withdrawal of Marseilles' *ex parte* application.

12. On October 12, 2011 at 9:34 p.m., I received an email from Mr. Weingarten advising me that Mr. Scher would not appear for his deposition the following day due to a family emergency. A true and correct copy of Mr. Weingarten's email is attached hereto as Exhibit 18. Mr. Weingarten suggested that our clients stipulate to an order setting Mr. Scher's deposition on a new date in order to avoid a motion to compel. The following day, I provided Mr. Weingarten with a draft stipulation for his client's review. True and correct copies of my email to Mr. Weingarten and the draft stipulation are attached hereto as Exhibits 19 and 20.

13. Mr. Weingarten advised me that he had not spoken with Mr. Scher but that he would get back to me as soon as he did. A true and correct copy of Mr. Weingarten's email is attached hereto as Exhibit 21.

14. I did not hear from Mr. Weingarten so I left him a voicemail on October 17, 2011 inquiring about the proposed stipulation and a new deposition date. Mr.

3
DECLARATION OF MICHAEL D. DEMPSEY

///

///

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed on October 26, 2011, at Los Angeles, California.

_____
MICHAEL D. DEMPSEY

Weingarten did not return my call. On October 19, 2011, I emailed Mr. Weingarten to inquire once again about securing a new deposition date by stipulation rather than by a motion to compel. A true and correct copy of my email is attached hereto as Exhibit 22. Mr. Weingarten did not respond to my email.

15. On October 24, 2011 – after receiving no response from Mr. Weingarten to my multiple emails and voicemail message – I emailed him once again to inquire about the status of Mr. Scher's deposition and advising him of the need to meet and confer. A true and correct copy of my email is attached hereto as Exhibit 23. Mr. Weingarten failed and refused to respond.

16. At approximately noon on October 25, 2011, I called Mr. Weingarten's office to try to arrange a meet and confer prior to filing this motion. Mr. Weingarten was not available so I left him a voicemail, to which he did not respond until the afternoon of October 26, at which time he told me he was too busy on other matters to talk before Friday, October 28 at the earliest.

17. On the evening of October 25, 2011 – after multiple unreturned phone calls and unanswered emails – Mr. Weingarten emailed me to advise me that he was researching issues related to staying the Florida case. He also sought revisions to the protective order he and I had worked on prior to Mr. Scher's cancelled deposition of October 13, 2011. A true and correct copy of Mr. Weingarten's email is attached hereto as Exhibit 24.

18. I responded to Mr. Weingarten by email on the morning of October 26, 2011. I advised Mr. Weingarten that in light of his client's cancellations and refusals to appear for deposition, I would have to move forward with filing the motion to compel. However, I assured Mr. Weingarten that I would take the motion off calendar if his client would agree to appear for deposition on a date certain, as set forth in the draft stipulation I had provided to him on October 13, 2011. A true and correct copy of my email is attached hereto as Exhibit 25.

///

## DECLARATION OF MARSHALL MANLEY

I, MARSHALL MANLEY, declare and state as follows:

1. I make this declaration in support of plaintiff Marseilles Capital, LLC's Motion to Compel Subpoenaed Witness Eugene Scher to Attend Deposition in Aid of Execution and for Sanctions. I have personal knowledge of all of the facts contained in this declaration and, if called as a witness, I could and would competently testify to all of said facts.

2. I am currently the owner of the majority of the membership interests and am the managing member of plaintiff Marseilles Capital, LLC ("Marseilles").

3. On or about April 8, 2010, Marseilles and Gerova Financial Group, LTD ("Gerova") entered into a share repurchase agreement whereby Gerova was obligated to pay Marseilles $75,000 a month for a total obligation of $900,000. On or about November 2010, Gerova stopped paying Marseilles monies due under the share repurchase agreement. Marseilles sued in the United States District Court for the Southern District of Florida.

4. On May 12, 2011, final judgment was entered in favor of Marseilles and against Gerova in connection with Gerova's breach of the share repurchase agreement in the amount of $375,000 in the United States District Court, Southern District of Florida, Ft. Lauderdale Division, Case No. 10-81294-CV-COHN-SELTZER (the "Underlying Action"). A true and correct copy of the Final Judgment is attached hereto as Exhibit A.

5. On July 21, 2011, Marseilles' attorneys, Rosenbaum Mollengarden Janssen & Siracusa, PLC, caused a subpoena for deposition in aid of execution to be issued on Eugene (a/k/a/ Gene) Scher, Gerova's Chief Operating Officer. True and correct copies of the deposition subpoena and notice of deposition are attached hereto as Exhibits B and C. Mr. Scher was personally served with the deposition subpoena prepared by Marseilles' attorneys on July 28, 2011. A true and correct copy of the proof of service is attached hereto as Exhibit D.

6. In addition to the judgment Marseilles obtained against Gerova, on May 24, 2011, partial final judgment was entered in my favor individually and against Gerova in the amount of $716,092.58. A true and correct copy of the Partial Final Judgment is attached hereto as Exhibit E. Additionally, on October 4 2011, a second partial final judgment in the amount of $3,340,816.09 was also entered in my favor and against Gerova. A true and correct copy of the Second Partial Final Judgment is attached hereto as Exhibit F.

7. Prior to my individual lawsuit against Gerova and the Underlying Action, I was the Chief Executive Officer of Gerova from January 23, 2010 to April 8, 2010. At that time, Gerova had assets which were valued in excess of $800 million. These assets included limited partnerships acquired from Stillwater Capital Partners ("Stillwater") and Weston Capital Group ("Weston"). In late December 2010, Joe Bianco (who at the time was Chief Executive Officer of Gerova) advised me that Gerova intended to return the limited partnerships it had acquired in Stillwater and Weston in exchange for the cancellation of the Gerova shares it had issued.

8. In or about April or May 2011, Mike Hlavsa (who at the time was Chief Financial Officer of Gerova) also advised me that Gerova intended to return the limited partnerships it had acquired in Stillwater Capital and Weston Capital in exchange for the cancellation of the Gerova shares it had issued. During Mr. Hlavsa's March 28, 2011 deposition, he testified that Gerova did not have the "financial wherewithal" to pay me. A true and correct copy of the relevant pages of Mr. Hlavsa's deposition transcript is attached hereto as Exhibit G. Mr. Hlavsa testified that Gerova's assets "need to be liquidated or sold…to be able to have the necessary cash in order for Gerova to meet its obligations…" See Exhibit G.

9. In or about July 2011, Rachel Lanham (who at the time was and currently is Gerova's Corporate Administrator) advised me Gerova cancelled the medical insurance it was contractually obligated to pay for me. Ms. Lanham also advised me that Gene Scher (who at the time was and currently is Gerova's Chief Operating

1  Officer) instructed her to cancel my medical insurance and told her I "won't get
2  anything else out of Gerova because [I] won't be able to find its assets."
3      10.   In an attempt to collect on the judgment against Gerova, Marseilles has
4  filed writs of garnishment against multiple entities that, according to Gerova's public
5  filings, either controlled assets of Gerova or owed money to Gerova.

- Vensure Employer Services, Inc. (who served its answer to the writ of garnishment on September 8, 2011) and Brevet Capital Management, LLC (who served its answer to the writ of garnishment on July 18, 2011) both denied they were indebted to Gerova.
- Stillwater Capital Partners, Inc. (who served its answer to the writ of garnishment on October 3, 2011) denied it has any assets or knows of anybody who does.
- Marseilles has had defaults entered in garnishment against the following entities: Wimbledon HDN Fund, LP, Weston Capital Management, LLC, Ticonderoga Securities, LLC, and Net Five Holdings, LLC.

16      11.   I am the principal management officer of Marseilles and the person most
17  knowledgeable about the facts which will be the subject of Mr. Scher's deposition. It
18  is therefore essential that I attend Mr. Scher's deposition.
19      12.   I live in Florida but spend the summers in Northern California in my
20  summer home. After the deposition subpoena was issued on Mr. Scher, I scheduled
21  business meetings in Los Angeles to coincide with Mr. Scher's August 29, 2011
22  deposition and made travel arrangements accordingly. When Mr. Scher refused to
23  attend his deposition on August 29, 2011, I had to attend the prescheduled meetings in
24  Los Angeles anyway and incur the travel expense of traveling to Los Angeles.
25      13.   I had meetings scheduled in New York beginning the second week of
26  October. When Mr. Scher agreed to appear for deposition on October 13, 2011, I
27  rearranged my schedule to ensure I would be available to attend his deposition. When
28  Mr. Scher cancelled the night before his deposition, I was forced to unnecessarily

1. incur the travel expense of traveling to Los Angeles once again.

2.     14.   I have returned to Florida and will now be forced to incur the additional expense of traveling back to California to attend Mr. Scher's deposition, including airfare, hotel expenses, meals, and local transportation.

I declare under penalty of perjury under the laws of the States of California and Florida that the foregoing is true and correct.

Executed in accordance with California law on October 26, 2011, at Palm Beach Gardens, Florida.

_____
MARSHALL MANLEY

5

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and am not a party to the within action. I am employed by the law firm of Dempsey & Johnson, located at 1880 Century Park East, Suite 516, Los Angeles, California 90067,

On October 26, 2011, I served the foregoing document(s) described as **NOTICE OF MOTION AND MOTION TO COMPEL SUBPOENAED WITNESS EUGENE SCHER TO ATTEND DEPOSITION IN AID OF EXECUTION AND FOR SANCTIONS IN THE AMOUNT OF $7500 AGAINST EUGENE SCHER AND HIS ATTORNEY ALEX WEINGARTEN; DECLARATIONS OF MICHAEL D. DEMPSEY AND MARSHALL MANLEY IN SUPPORT THEREOF** by enclosing the document(s) in a sealed envelope addressed as follows:

Alex M. Weingarten, Esq.
Spillane Weingarten LLP
10866 Wilshire Blvd., Ste. 500
Los Angeles, CA 90024

☒ **BY MESSENGER SERVICE**: I served the documents by placing them in an envelope or package addressed to the person[s] at the [ABOVE ADDRESS/ADDRESSES ON ATTACHED SERVICE LIST] and providing them to a professional messenger service for service.

☐ **BY FEDERAL EXPRESS**: I enclosed the documents in an envelope or package provided by Federal Express and addressed to the person[s] at the [ABOVE ADDRESS/ADDRESSES ON ATTACHED SERVICE LIST]. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses [ABOVE/ON ATTACHED SERVICE LIST]. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 26, 2011, at Los Angeles, California.

Myrna Yzaguirre
Type or Print Name                                Signature